IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GREAT LAKES REINSURANCE (UK) PLC,** | CIVIL ACTION |
| **Plaintiff,** | |
| v. | NO. 14-539 |
| **STEPHENS GARDEN CREATIONS, Inc. doing business as "STEPHENS AQUATIC SERVICES, INC."** | |
| **Defendant.** | |

**DuBois, J.**                                                                                        **July 31, 2015**

**M E M O R A N D U M**

## I.   INTRODUCTION

This insurance case arises out of a dispute over whether certain losses suffered by defendant and counterclaim-plaintiff Stephens Garden Creations, Inc. ("Stephens") are covered by the insurance policy issued by plaintiff and counterclaim-defendant Great Lakes Reinsurance (UK) PLC ("Great Lakes"). Among other claims, Stephens avers that Great Lakes acted in bad faith in denying coverage for several claims. Presently before the Court is Great Lakes' Partial Motion for Summary Judgment as to Stephens' claim of bad faith. For the reasons set forth below, the Court grants Great Lakes' Partial Motion for Summary Judgment.

## II.    BACKGROUND[1]

### A.  Factual Background

#### 1.  The Parties

Stephens operates an "on site" retail establishment that sells aquatic plants, small fish, decorations, and products for fish, plants, and ponds. (Pl.'s Statement of Undisputed Facts ("Pl. SOF") ¶ 2.) The company also constructs, designs, and renovates ponds, water gardens, and fountains at clients' homes and businesses. (*Id.* ¶ 3.) Stephens is owned by Peter Schlett, the company's president, and Pamela Schlett, the company's general manager. (*Id.* ¶ 4.)

#### 2.  The Policy

Great Lakes issued a Commercial Property Policy to Stephens, with a policy period lasting from September 26, 2012 to September 28, 2013. (*Id.* ¶ 13.) Stephens' Commercial Property Policy stated, *inter alia*:

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
> …
> 1. Covered Property
>    …
>    b. Your Business Personal Property located in or on the building described in the Declarations… consisting of the following…
>
>      (1) Furniture and fixtures;
>      (2) Machinery and equipment;
>      (3) 'Stock';
>      (4) All other personal property owned by you and used in your business;
>    …
>     'Stock' means merchandise held in storage for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.[2]

---

[1] As required on a Motion for Summary Judgment, the facts are presented in the light most favorable to Stephens, the nonmoving party.

2

2. Property Not Covered

   Covered Property does not include:
   …
   b. Animals, unless owned by others and boarded by you, or if owned by you, only as 'stock' while inside of buildings.

(Mot. for Summ. J., Business and Personal Property Form, Ex. E, 32, 45, 33.)

The policy's Business Income and Extra Expense Endorsement stated, *inter alia*:

   Business Income

   …We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations.
   …
   Extra Expense

   (A) We will pay necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

(Mot. for Summ. J., Business Income and Extra Expense Endorsement, Ex. E, 67.)

The policy's Debris Removal Endorsement stated, *inter alia*:

   This certificate also insures…costs or expenses; (a) which are reasonably and necessarily incurred by the Assured in the removal, from the premises of the Assured at which the Damage or Destruction occurred, of debris which results from the Damage or Destruction; and (b) of which the Assured becomes aware and advises the amount thereof to Underwriters heron within one year of the commencement of such Damage or Destruction.

(Mot. for Summ. J., Debris Removal Endorsement, Ex. E, 71.)

---

[2] An old policy defined stock as "merchandise held in storage *or* for sale." (Mot. for Summ. J., Business and Personal Property Form, Ex. E, 45) (emphasis added.) A Special Coverage and Extensions Endorsement to the Policy Form JCP-400 (09/08) in the policy at issue defined stock as "merchandise held in storage for sale." (Mot. for Summ. J., Expert Report, Ex. SS, 11.) The parties do not contest the applicability of the term "stock" in the Endorsement.

### 3. The Property

Stephens' property consisted of four separate buildings, identified as Buildings 1-4. (Pl. SOF ¶ 5.) Stephens used Building 1 for the propagation of plants and storage of fish, displays, potting, and other products. (*Id.* ¶ 6; Mot. for Summ. J., EUO of Pamela Schlett ("Mrs. Schlett EUO"), Ex. A, 33:15-18.) Building 2 contained Stephens' primary retail space and two fish selection systems that housed fish offered for sale to the public. (Pl. SOF ¶ 8.) Stephens used Buildings 3 and 4 — moveable wood sheds — for additional storage space. (*Id.* ¶ 11.)

### 4. The Loss and Subsequent Investigation

On November 6, 2012, an accidental fire destroyed Building 2 and caused damage to Buildings 1, 3, and 4. (*Id.* ¶¶ 33-34.) Great Lakes received notice of the loss on November 7, 2012. (*Id.* ¶¶ 36-37.) Vickie Pritchett was assigned by Great Lakes to adjust the loss and performed a preliminary investigation and inspection on November 9, 2012. (*Id.* ¶¶ 38, 39.) Great Lakes issued $50,000 advance payments to Stephens on November 20, 2012 and January 23, 2013. (Mot. for Summ. J., First Payment Advance, Ex. N; Mot. for Summ. J., Second Advance Payment, Ex. U.) As of March 2, 2015, the date on which Great Lakes filed its Partial Motion for Summary Judgment, Great Lakes had paid Stephens a total of $712,586.13 as to the claims detailed below. (Pl. SOF ¶ 88.)

#### a. Stephens' Real Property Damage Claims

Both Great Lakes and Stephens hired contractors to submit property damage estimates for Buildings 1-4. In January 2013, Doozer Construction, which was retained by Stephens, and Puro-Tec, which was retained by Great Lakes, inspected the property and submitted property damage estimates. The two estimates were dramatically different, with a disparity of

4

approximately $542,879.78 — Doozer's estimate totaled $783,360.45, while Puro-Tec's estimate totaled $239,625.24. (Mot. for Summ. J., Doozer Construction Estimate, Ex. Z, 2-13; Mot. for Summ. J., Puro-Tec Estimate, Ex. AA; Mot. for Summ. J., February 13, 2013 Status Report, Ex. W.) In her February 13, 2013 status report, Ms. Pritchett advised Stephens that Great Lakes, Puro-Tec, and Doozer were "sort[ing] out an agreed scope and estimate" which she needed before she could recommend payment by Great Lakes. (Mot. for Summ. J., February 13, 2013 Status Report, Ex. W.) Ms. Pritchett also stated that she would not recommend payment for property damage until Great Lakes was able to ascertain whether there were liens on the property. *Id.* Approximately two months later, on April 9, 2013, Great Lakes paid Stephens' property damage claim for $239,630.14. (Mot. for Summ. J., Email from Christina Capobianco to Jonathan Wheeler, dated April 9, 2013, Ex. DD.)

    b. **Stephens' Business Personal Property Claims**

Great Lakes paid Stephens' Business Personal Property claim for Building 2 on January 31, 2013 and requested additional documentation to support Stephens' Building Personal Property claim for Building 1. (Mot. for Summ. J., E&S Claims Notes Detailing $200,000 Payment, Ex. Y; Mot. for Summ. J., February 13, 2013 Status Report, Ex. W.) After examining Mr. and Mrs. Schlett under oath, (Examinations Under Oath "EUO"), and reviewing additional documentation of damage to items in Building 1 provided by the Schletts, Great Lakes formally denied coverage for Stephens' koi fish, rock pond features, and computers on May 31, 2013. (Mot. for Summ. J., Letter from Christina Capobianco to Stephens, Ex. BB; Mot. for Summ. J., Coverage Opinion Letter, Ex. HH.)

In September and October of 2013, Ms. Pritchett advised Brian Weller, a public adjustor retained by Stephens, that Stephens had not provided Great Lakes with the requested documentation to support their claim for business personal property in Building 1. (Pl. SOF ¶ 84; Mot. for Summ. J., Letter from Vickie Pritchett to Brian Weller, Ex. MM and Ex. NN.) On December 4, 2013, Stephens provided the requested documentation, claimed additional items as business personal property, and requested that Great Lakes reconsider its denial of coverage for the koi fish, plants, rock pond features, and computers. (Mot. for Summ. J., December 4, 2013 Letter, Ex. OO.) Great Lakes made its final coverage decision on January 21, 2014; it paid additional claims and denied coverage for the "shed," staff shirts, koi fish, plants, computers, and rock pond features. (Mot. for Summ. J., Final Coverage Determination Letter, Ex. QQ.)

**B. Procedural History**

On January 21, 2014, Great Lakes filed a Complaint for Declaratory Judgment, seeking a declaration regarding its coverage obligations under the Policy.  On March 21, 2014, Stephens filed an Answer to the Complaint and a Counterclaim against Great Lakes alleging breach of contract (Count I) and bad faith (Count II).  By Order dated July 15, 2014, the Court granted Great Lakes' Motion to Dismiss Stephens' Counterclaim to the extent that Stephens sought recovery for compensatory damages, including damages for emotional distress, under Pennsylvania's bad faith statute, 42 Pa. Const. Stat. Ann. § 8371. The Court granted Stephens leave to amend its Counterclaim within twenty days to seek such relief in connection with its alleged breach of contract claim, and Stephens did so on July 17, 2014.  Following a preliminary pretrial conference held on July 18, 2014, by agreement of the parties, the Court dismissed Great Lakes' Declaratory Judgment Complaint without prejudice, and the litigation proceeded solely

on the issues raised in Stephens' Amended Counterclaim. Presently before the Court is Great Lakes' Partial Motion for Summary Judgment as to Stephens' bad faith claim asserted in the Amended Counterclaim.

## III.     LEGAL STANDARD

### A.     Motion for Summary Judgment Standard

A court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A factual dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support a claim. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (citations omitted). The party asserting a fact "must support the assertion by ... citing to particular parts of material in the record." Fed. R. Civ. P. 56(c)(1)(A).

### B. Bad Faith Standard

Pennsylvania statutory law allows a court to award damages if it finds that an insurer acted in bad faith in denying coverage under an insurance policy. 42 Pa. Cons. Stat. Ann. § 8371. To prevail on a claim of bad faith, a plaintiff must show, through clear and convincing evidence, "the absence of a reasonable basis for denying benefits of the policy *and* the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *United States Fire Ins. Co. v. Royal Ins. Co.*, 759 F.2d 306, 309 (3d Cir. 1985) (emphasis added). "The plaintiff's burden in opposing a summary judgment motion is commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial." *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999), *aff'd*, 234 F.3d 1265 (3d Cir. 2000).

## IV. DISCUSSION

In its Partial Motion for Summary Judgment, Great Lakes asks the Court to dismiss Count II of the Amended Counterclaim because, according to Great Lakes, Stephens has failed to present any evidence that Great Lakes acted in bad faith in the handling and adjustment of Stephens' insurance claim. The Court agrees with Great Lakes and addresses its six arguments in turn.

### 1. Great Lakes' First Argument: Koi Fish

Stephens made a $131,200 business personal property claim for koi fish that perished as a result of the fire. (Pretrial Mem. of Def./Counter-Claimant Pl. Stephens ("Stephens' Pretrial Mem.") 3.) Great Lakes argues that it did not act in bad faith because it had a reasonable basis

for denying coverage. (Great Lakes Memorandum of Law ("Great Lakes Mem.") 11-14.) The Court agrees.

The Court concludes that Great Lakes reasonably determined that the koi fish were not covered as "stock" under the policy. First, Mrs. Schlett testified in her EUO that the koi fish in Building 1 "weren't intended for sale." (Mot. for Summ. J., Mrs. Schlett EUO, Ex. A, 167:12-14.) Next, the fish listed for sale on Stephens' website ranged in price from $10 to $250, while the koi fish listed on the inventory submitted to Great Lakes ranged in price from $450 to $2,750. (Mot. for Summ. J., Final Coverage Determination Letter, Ex. QQ.) Finally, Stephens did not provide any documentation to Great Lakes showing that it sold the koi fish at issue to customers. Based on this information, Great Lakes determined that the koi fish were not "held in storage for sale" and thus not "stock" under the policy, but rather the insured's personal fish excluded under the policy.[3] *Id*. For those reasons, the Court grants Great Lakes' Partial Motion for Summary Judgment on this issue.

### 2. Great Lakes' Second Argument: Payroll Expenses

Stephens made a $242,564.76 claim for the salaries of twenty-two employees under the policy's Business Income Coverage Endorsement. (Stephens' Pretrial Mem. 3; Final Coverage Determination Letter, Ex. QQ; Great Lakes Mem. 15-16.) The Court concludes that Great Lakes did not act in bad faith because it had a reasonable basis for denying coverage.

Stephens' policy covered "ordinary payroll expenses for 60 days following the date of direct physical loss or damage, unless a greater number of days is shown in the Declarations."

---

[3] The Court does not decide whether the koi fish should have been covered under the policy, only that Great Lakes had a reasonable basis for denying coverage.

(Mot. for Summ. J., Business Income and Extra Expense Endorsement, Ex. E, 67.) Stephens submitted payroll expenses from January 1, 2013 to November 1, 2013, which were incurred more than 60 days after the November 6, 2012 loss and consequently fell outside of the policy's coverage period.[4] (Mot. for Summ. J., December 4, 2013 Letter, Ex. OO; Mot. for Summ. J., Final Coverage Determination Letter, Ex. QQ.) Although Stephens argues that the payroll expenses were covered under the policy's Loss of Business Income provision (Def. Mem. 19-20), Great Lakes had reason to conclude that the payroll expenses constituted "ordinary payroll expenses" excluded from coverage because they were incurred more than 60 days after the loss. *See Toll Naval Associates v. Lexington Ins. Co.*, No. 03-6537, 2005 WL 1923836, at *4. (An insurer that reasonably interprets the policy to exclude coverage does not act in bad faith.) Thus, the Court grants Great Lakes' Partial Motion for Summary Judgment on this issue.

### 3. Great Lakes' Third Argument: Peter Schlett's Payroll Expenses

Stephens made a $27,777.81 claim for debris removal by Peter Schlett during the period of January 20, 2013 through October 27, 2013.[5] (Stephens' Pretrial Mem. 3; Mot. for Summ. J., Final Coverage Determination Letter, Ex. QQ.) The claim, in the total amount of Mr. Schlett's salary for that period, was denied on the ground that Great Lakes did not find it reasonable to

---

[4] The Declarations do not show an increase in the number of covered days. (Mot. for Summ. J., Final Coverage Determination Letter, Ex. QQ.)

[5] Stephens previously submitted a claim for debris removal by Mr. Schlett immediately after the fire. Great Lakes paid that claim because it found those costs to be "reasonably and necessarily incurred" by Mr. Schlett in removing debris from the property. (Mot. for Summ. J., Final Coverage Determination Letter, Ex. QQ; Mot. for Summ. J. Debris Removal Endorsement, Ex. E, 71.)

believe that Mr. Schlett did nothing but remove debris from January 20, 2013 through October 27, 2013.

The Debris Removal Endorsement covers expenses that were "reasonably and necessarily incurred by the Assured" in debris removal from the property.[6] Mr. Schlett testified at his deposition that he continued to conduct "off-site" construction after the fire and resumed "other work, other than removing debris," in the "early summer of 2013." (Mot. for Summ. J., Mr. Schlett Dep. 26:1-18; 29:15-30:15.) As the policy covers debris removal expenses "reasonably and necessarily incurred" by the insured, not Mr. Schlett's "other work" or "off-site" construction, Great Lakes had a reasonable basis for denying coverage. *See Toll Naval Assoc.*, 2005 WL 1923836, at *4 (granting summary judgment for insurer on a bad faith claim because the insurer reasonably interpreted the policies to exclude coverage). Thus, the Court grants Great Lakes' Partial Motion for Summary Judgment on this issue.

**4. Great Lakes' Fourth Argument: Staff Shirts and Sales Tax Returns**

Stephens made a $3,800.75 claim for shirts it purchased for its sales staff and for accounting fees in connection with the filing of sales tax returns. (Stephens' Pretrial Mem. 3; Mot. for Summ. J., December 4, 2013 Letter, Ex. OO; Mot. for Summ. J., Mrs. Schlett Dep., Ex. B, 121:1-6.) The Court concludes that Great Lakes did not act in bad faith in denying coverage because the claims are not covered under the policy.

An insured has the burden of showing that he or she is entitled to coverage. *Seto v. State Farm Ins. Co.,* 855 F. Supp. 2d 424, 432 (W.D. Pa. 2012). Stephens has failed to meet this

---

[6] The Court does not decide whether Mr. Schlett's payroll should have been covered under the policy, only that Great Lakes had a reasonable basis for denying coverage.

burden because it has not explained why its claim for staff shirts would be covered under the Business Income and Extra Expense Endorsement, which covered expenses "caused by or result[ing] from" the fire.[7] (Mot. for Summ. J., Business Income and Extra Expense Endorsement, Ex. E, 67.)  As to the sales tax returns, Great Lakes denied coverage because the expenses did not result from the fire: Stephens operated a retail store and would have had to file sales taxes regardless of whether the fire occurred. *Id.*

The Court agrees with Great Lakes that these staff shirts and sales tax returns are not covered under the policy and concludes that Great Lakes did not act in bad faith in denying these claims. *See USX Corp. v. Liberty Mut. Ins. Co.,* 444 F.3d 192, 202 (3d Cir. 2006) (concluding that a bad faith claim "necessarily fails" when there is no coverage under the policy). Thus, the Court grants Great Lakes' Partial Motion for Summary Judgment on this issue.[8]

### 5. Great Lakes' Fifth Argument: Plants, "Shed," Rock Pond Features, and Computers

Stephens made a $24,174.36 business personal property claim for plants, a "shed," rock pond features, and the reconstruction of computer hardware located within Building 1 at the time of the loss. (Stephens' Pretrial Mem. 3.) The Court concludes that Great Lakes did not act in bad faith because it had a reasonable basis for denying coverage.

---

[7] Great Lakes paid for staff shirts that were destroyed in the fire. (Mot. for Summ. J., Mrs. Schlett Dep., Ex. B, 117:18-118:7.)

[8] As the Court has concluded that the staff shirts and sales tax returns are not covered under the policy, the Court also dismisses Stephens' breach of contract claim (Count I) to the extent that it seeks recovery for  those items.

First, Great Lakes did not act in bad faith in denying Stephens' claim for additional plant coverage because Stephens failed to support its claim with adequate documentation.[9] (Mot. for Summ. J., Final Coverage Determination Letter, Ex. QQ.); *see Seto*, 855 F. Supp. 2d, at 432-33 (granting summary judgment for the insurer on bad faith claim because the insured failed to produce sufficient documentation to support their claim for additional coverage).

Next, Great Lakes did not act in bad faith in denying coverage for the "shed" because Mrs. Schlett testified in her EUO that the "shed" was Building 3 or 4, and Great Lakes paid Stephens' claim for damage to Buildings 3 and 4 on April 9, 2013. (Mot. for Summ. J., Mrs. Schlett EUO, Ex. A 181:8-16; Email from Christina Capobianco to Jonathan Wheeler, dated April 9, 2013, Ex. DD.) Although Stephens argues that Mrs. Schlett referred to a different shed in her testimony, the record contains evidence of claims for five sheds, all of which were paid by Great Lakes. (Mot. for Summ. J., December 4, 2013 Letter, Ex. OO; Mot. for Summ. J., Final Coverage Determination Letter, Ex. QQ.) It was thus reasonable for Great Lakes to conclude that it had already paid for the "shed" and owed no additional payment.

As to the rock pond features, Great Lakes did not act in bad faith in denying coverage because it based its coverage decision on Mrs. Schlett's EUO testimony and a reasonable construction of the policy. *See Toll Naval Associates*, 2005 WL 1923836, at *4. Based on Mrs.

---

[9] Stephens argues that Great Lakes underestimated the cost of the plants when it first made payment. (Mot. for Summ. J., December 4, 2013 Letter, Ex. OO.) Although the parties may dispute the value of the plants, the record contains no evidence that Great Lakes acted in bad faith in adjusting Stephens' plant claim, and an insurer's low but reasonable estimate does not evidence bad faith. *See Seto v. State Farm Ins. Co.,* 855 F. Supp. 2d 424, 430 (W.D. Pa. 2012) ("Pennsylvania law does not treat as bad faith an insurer's low but reasonable estimate of an insured's losses.") (citing *Brown v. Progressive Ins. Co.,* 860 A.2d 493, 501 (Pa. Super. Ct. 2004)).

Schlett's testimony that Stephens continued to use and sell the rocks after the fire, Great Lakes concluded that there was no "direct physical loss…[or] damage" to the rocks, as required for coverage under the policy.[10] (Mot. for Summ. J., Business and Personal Property Form, Ex. E, 32, 45, 33; Mot. for Summ. J., Mrs. Schlett EUO, Ex. A, 177:17-178:20-23.)

Finally, Great Lakes did not act in bad faith in denying coverage for the reconstruction of computer hardware because Stephens provided no documentation in support of that claim. (Mot. for Summ. J., December 4, 2013 Letter, Ex. OO; Mot. for Summ. J., Final Coverage Determination Letter, Ex. QQ.); *see Seto*, 855 F. Supp.2d, at 432-33 (concluding that an insurer does not act in bad faith when it denies coverage because of the insured's failure to produce adequate documentation to support its claim).

Thus, the Court grants Great Lakes' Partial Motion for Summary Judgment on this issue.

### 6. Great Lakes' Sixth Argument: Delayed Payment of Property Damage Claims

Stephens argues that Great Lakes' delayed payment of its property damage claims constitutes bad faith. (Def. Mem. 16-17.) The Court disagrees.

An insurer's delay in settling a claim "does not, on its own, necessarily constitute bad faith." *Kosierowski,* 51 F.Supp.2d, at 588. Rather, a court should look "to the degree to which a defendant insurer knew that [it] had no reason to deny the [claim]." *Id.,* at 588–589. A delay attributable to the uncertainty of the claim's value or the insurer's need to investigate further does not constitute bad faith. *See Quaciari v. Allstate Ins. Co.,* 998 F. Supp. 578, 583 (E.D. Pa.) *aff'd,* 172 F.3d 860 (3d Cir. 1998) (holding that even if the delay was attributable to the insurer,

---

[10] The Court does not decide whether the rock pond features should have been covered under the policy, only that Great Lakes had a reasonable basis for denying coverage.

the thirteen month delay did not, standing alone, constitute bad faith since the claim required further investigation by the insurer); *see also Williams v. Hartford Casualty Ins. Co.,* 83 F.Supp.2d 567, 575 n. 15 (E.D. Pa. 2000) *aff'd,* 261 F.3d 495 (3d Cir. 2001) (finding that delay of fifteen months did not constitute bad faith, given the uncertainty of the claim's value); *see also Kosierowski,* 51 F.Supp.2d 583, 589 (E.D. Pa. 1999) ("[I]f delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred.").

The record demonstrates that Great Lakes' delay stemmed from a dispute over the claimed damages and Great Lakes' need to investigate further, which does not evidence bad faith. *Id.* In particular, Doozer Construction and Puro-Tec's estimates for property damage were dramatically different, with a disparity of approximately $542,879.78 — Doozer's estimate totaled $783,360.45, while Puro-Tec's estimate totaled $239,625.24. (Mot. for Summ. J., Doozer Construction Estimate, Ex. Z, 2-13; Mot. for Summ. J., Puro-Tec Estimate, Ex. AA; Mot. for Summ. J., February 13, 2013 Status Report, Ex. W.). (Mot. for Summ. J., Doozer Construction Estimate, Ex. Z, 2-13; Mot. for Summ. J., Puro-Tec Estimate, Ex. AA; Mot. for Summ. J., February 13, 2013 Status Report, Ex. W.) The companies needed to "sort out an agreed scope and estimate" before Ms. Pritchett would recommend payment to Great Lakes. (Mot. for Summ. J., February 13, 2013 Status Report, Ex. W.)

Additionally, Ms. Pritchett stated that she would not recommend payment for property damage until Great Lakes was able to ascertain whether there were liens on the property. (Mot. for Summ. J., February 13, 2013 Status Report, Ex. W.) The record contains no evidence showing that the delay stemmed from anything other than Great Lakes' need to investigate further. Thus, the Court grants Great Lakes' Partial Motion for Summary Judgment on this issue.

**IV. Conclusion**

The record demonstrates that Great Lakes did not act in bad faith in denying coverage or delaying payment of Stephens' claims. The Court, therefore, grants Great Lakes' Partial Motion for Summary Judgment as to Count II of Stephens' Amended Counterclaim. The Court further dismisses Count I — breach of contract — to the extent that it covers Stephens' claim for staff shirts and sales tax returns.

An appropriate order follows.